Without, however, having conceded anything, I think he would be quick to point out. We will hear argument next in number 2011-1052 MAG INSTRUMENT v. BRINKMANN CORP. Mr. Weiss, when you're ready. Thank you, Your Honor.  Initially, it is significant to note that the dual band design is not a product shape or product configuration trademark. The pair of identifiable bands which circle the flashlight barrel and contrast with it do not define the shape or configuration of the product. The bands do not define the shape or configuration of the product any more than if you painted a design on the flashlight. The bands do not define the shape or configuration of the product. They conform to the shape of the product. And because the board incorrectly interpreted the dual band design to be a product shape mark, it adopted a flawed functional and secondary meaning analysis of the mark. The evidence submitted by MAG established that the dual band design has been unique to MAG since the MAG Charger flashlight was first sold in the early 80s. And to have two distinctive bands located on the barrel and which contrast with the barrel is unique in the field of flashlights and has been for 30 years. But the board here found that the bands work as a conductive surface transferring energy from the charger to the batteries, right? That is correct. Tell me why substantial evidence doesn't support that finding. And if it does support that finding, what your argument is against functionality? Because the bands, while they have a functional element, also have non-functional elements. And it's clear that you can have a trademark which comprises both functional and non-functional elements. And in this case, the non-functional elements, if you interpret the mark as including contrasting bands, that's non-functional. If you consider also, though, that the location of the bands on the flashlight is also non-functional. The board disregarded the contrasting bands part because they indicated that the application did not include any suggestion that there were contrasting bands. But that's not true. The original drawing showed contrasting bands and the specification showed contrasting bands. And the description of the mark clearly talks about the location of the bands being on the barrel of the flashlight. So there were those non-functional elements which the board never considered. The board, because it, I think, felt that this was a product shape trademark, also overly emphasized the patent and gave a great amount of attention to the traffics case. The traffics case is different in this case. There, the springs, the dual springs in the traffics case were claimed as part of the invention. And that was the central advance claimed in the expired utility patent. The traffics devices cases, the springs also defined in large part the shape of the product. The patent relied upon by the board in Brinkman in this case is MAG's 673 patent on a rechargeable flashlight which expired over 10 years ago. The board, in its functional analysis, misconstrued the 673 patent. Contrary to the board's conclusion, the 673 patent does not describe the useful purpose of the dual bands and does not claim dual bands. In fact, the board misconstrued claim two of the 673 patent by referring to circumferential bands when the claim recites only a single conductive strip. The 673 patent says nothing about continuous or 360 degree contact being an advantage and it is not listed as an object of the invention. Contrary to the board's conclusion, the positioning of the bands is not fundamentally covered by the expanded expired patent. No advantage is described regarding the positioning of the conductive strips on the flashlight barrel. As conceded by the board, the exterior design of the bands shown in the 263 patent is different than the dual band design. The 673 patent is also colorblind. The patent does not care if the rings disclosed in the patent contrast with the barrel and it certainly does not suggest that having contrasting rings would provide any advantage. The board and Brinkman both argued that the mark could not be construed as contrasting bands. I've already indicated that the original drawing and the specimen both show contrasting bands, but beyond that, it's implicit in any trademark that the mark be a noticeable attention getter. The board in its decision ignored that standard and adopted instead the standard of subtle perception would be sufficient to satisfy a trademark. The use of MAG in this case provided an expert in product design and manufacturing, Professor Siegel, and two other witnesses, MAG's director of engineering, Mr. Hawthorne, and the inventor and designer of the MAG charger flashlight, Mr. Magalico. All three have a technical background in the design and manufacture of flashlights. MAG also provided a witness, Mr. Zucchini, having an extensive background in the cost to manufacture flashlights. All of these witnesses provided testimony on the issue of functionality. Brinkman did not offer any expert testimony or any testimony by someone having a technical background with regard to this issue. The use of contrasting bands on the barrel is not essential to the use or purpose of the flashlight, and having such bands does not affect the cost or quality of the flashlight. There is nothing in the record that having bands contrasting with the barrel hinders competition. The location of the bands on the barrel of the flashlight is also not essential to the purpose of the flashlight, nor does it affect the cost or quality of the flashlight. Mr. Magalico testified that the bands could be in a different location. Professor Siegel also testified that the location of the bands could be changed. And Mr. Hawthorne testified not only could they be changed, but that relocating the bands would require only a few simple modifications. It was up to Brinkman as the opposer to establish prima facie that the design is functional. If the mark is construed to consist of two separate bands which encircle and contrast with the flashlight barrel, then Brinkman has not attributed any function to this contrasting design. And if the band design, as defined by the description in the drawing, also locate the position of the design on the flashlight, then no evidence has been submitted by Brinkman to show that the location of the design on the flashlight is functional. With regard to advertising, Mag has pointed out in its briefs that advertising with respect to this 360 degree contact feature is outdated and limited. And it is simply one of many purported advantages attributed in the advertising to the flashlight. This feature is not essential to the performance of the flashlight. The flashlight will switch on and off without 360 degree contact. It will provide light without the 360 degree contact. And the battery can be charged in the flashlight without 360 degree contact. And to the extent that such a feature is advantageous, it is offset by disadvantages. For example, the 360 degree contact feature has the disadvantage in not positioning the switch when the flashlight is in the cradle so that the switch can be easily accessed when it is removed from the cradle. And unlike other rechargeable systems where matching detents are used to hold the flashlight in place, the Mag charger must be held in place with a cradle that conforms to the head of the flashlight. And this requires the cradle to be larger than in other systems. The board should have assessed the effect registration of the Mark would have on competition. There has been no showing that the lack of the 360 degree contact would hinder competition or its demand. In fact, the board totally ignored the most important evidence relating to this issue. The 673 patent has been expired for over 10 years, but no other flashlight manufacturer, including Brinkman, has offered a rechargeable flashlight with 360 degree contact. Mr. Weiss, you're into your rebuttal time. Do you want to save any of it? All right. Very well. We'll hear from your opposing counsel then. Mr. Clark. Gary Clark for Appley, the Brinkman Corporation and CrossAppellant. I think counsel's correct in focusing his remarks on the dual band trademark because I think that's the primary issue on appeal here. We take great issue with the remarks that counsel made about the issue of perceptibility and contrast of the Mark. Clearly, the board recognized that to be a trademark, the dual bands have to be perceptible. MAG Instruments says, well, the Mark is that they're contrasting. We don't really understand what the difference is between perceptible and contrasting. At most, it's a matter of degree. And one thing the court needs to keep in mind is that this is a rechargeable battery system, which depends upon physical contact between the bands on the flashlight and some kind of contacts in the charging cradle in order to complete the electrical circuit, which will then recharge the rechargeable battery inside the flashlight. Now, MAG Instrument and my client both make primarily machined aluminum flashlights. The bands obviously have to be metallic in order to form contacts for completing the electrical recharging circuit. So that means that in order to separate out or insulate the two bands on the flashlight, there has to be at least two insulators between one of the bands and the remainder of the flashlight, one on each insulator on each side of one of the bands, so it's not shorted out by the rest of the machined aluminum flashlight. But of course, the trademark registration or application is not limited to machined aluminum flashlights. It could be plastic flashlights. You'd still need metallic conductors to form the charging system, but then they could be separated by simply one non-metallic insulating ring, if you will, in order to separate them so that there was not an electrical short in the system. The point of this is that no matter how this supposed trademark is implemented, you're going to have different materials. You're going to have some metal materials. You're going to have some plastic materials. Almost inherently, there's going to be a perceptible difference in those bands. You're not going to be able to hide them in any way so that they are completely imperceptible. When MAG Instruments says that what the board failed to realize is that the contrasting aspect of the bands really is not a function, what they're really doing is making a backdoor argument that we, MAG Instruments, are the only ones who should be allowed to have these two bands be visible to the consumer. Everyone else, if they want to practice the two bands, ought to find a way to make them invisible. We submit that's simply a theoretical argument, a possibility. It hasn't been demonstrated by MAG Instruments that it is even possible to completely obscure and make completely invisible these two bands. What it would require is some level of manufacturing perfection for what is essentially a fairly economical device that sells maybe for $10. Mr. Weiss says, well, so what? My design has some functional aspect, but it has non-functional aspects. You heard him say that. And so he said, okay, I'll concede to you. I've got some functional aspect here, but I also have a design aspect. Why can't I have my design pattern? Well, that could be said in almost every product feature case. MAG says it's not a product configuration, but it's a product feature. The Supreme Court in traffics devices disposed of that argument. That case came to the Supreme Court from a court of appeals decision which said that the purported trademark owner in traffics device could have trade dress rights in the dual spring design. And one of the arguments that impressed the court of appeals in that case was that the defendant's dual springs could be enclosed in a box or inside a framework so they weren't visible. And he said, and the plaintiff in that case and the court of appeals agreed with him, that that was an alternative for the defendant. And the Supreme Court disposed of that. And they said, because the dual spring design is functional, it is unnecessary for competitors to explore designs to hide the springs, say by using a box or framework to cover them. The dual spring design assures the user the device will work. That's exactly this situation. These two bands assure the user that the device has the ability to make the contacts inside the charging cradle that will complete the electrical recharging circuit. And then the Supreme Court went on and they said, if buyers are assured the product serves its purpose by seeing the operative mechanism that in itself serves an important market need, it would be at cross purposes to those objectives and something of a paradox were we to require the manufacturer to conceal the very item the user seeks. And we think that's a complete answer to this argument about the dual band supposedly having two different functions, an ornamental or trademark function and a utilitarian function. As I say, that could be the argument in every case. And what we say is, if the argument that MAG's making, and this is the argument is, you have to achieve perfection to hide the bands, no competitor should be under that obligation in order to avoid MAG Instruments purported trademark rights. And we have no assurance, and MAG has never given us any assurance, that if the bands are all perceptible, they still won't charge infringement and threaten that competitor with a lawsuit. We have no way of knowing on the range of slightly perceptible to maximum contrast where MAG Instrument would draw the line and say, good enough, we're not going to sue you, or too much, we are going to sue you. So we say that this is really kind of a red herring, this whole idea of contrast versus perceptibility. Now, in terms of functionality, we differ with MAG Instrument in terms of the importance of the patent in this case. We say this is essentially another traffic devices case where this court could stop with the patent and simply conclude that in and of itself it's enough evidence of functionality that we don't have to go through the Morton Norwich analysis. Does it matter, as your friend on the other side said that the patent expired 10 years ago and nothing's happened since then, does that make a difference? And your honor, they continue to mark the packaging and the owner's manual with the patent the entire time, thereby subjecting themselves potentially to a false marking lawsuit. But for the current act, which has basically taken away false marking as a cause of action, this appellant was doing exactly what the statute forbid and sending the message to the marketplace, we have a patent on this product. And the whole purpose of the false marking statute was to say we're not going to force people to go research and find out if that's really true. So they continue to mark this product with a patent. And then a few years later, they added both to the package and to the owner's manual a representation that they claimed essentially 43A rights in the dual bans. So they've been sending the message to the marketplace the entire time between their patent and their packaging and owner's manual that they claim rights in this dual ban and that anybody who uses them is subject to a lawsuit. So we think that the so-called evidence that nobody has used the dual ban from the time of the expiration of the patent really is completely nullified by this evidence. Somebody would have to have had to brace themselves and decide that the dual ban design was so important that they were willing to face threat of suit from that instrument. And therefore, we think that the idea that we've gone 10 years without anybody else using a dual ban design is really not evidence at all of anything. It is true that the patent is not as explicit about the functional characteristics, advantages of the dual ban as perhaps one would like. But we need to remember that the patent is directed to persons of ordinary skill in the art. You can't read the patent without appreciating that the point of the dual bans is that you get complete 360 degree ability to place the flashlight in the charger. Do you have the patent available to you? Yes. Could you get it? And I want to walk through the aspect of the patent that I'm finding the patent a little bit hard to make out exactly how it effectively anticipates, if I can use that term, the design. What is it that you think among, just looking at the figures, what is it that you think most is most telling in leading us to conclude that the dual ban design is found in the patent? We think if you just look at figures two and three, you can tell that this flashlight can be placed in this charging cradle in any orientation. That much so far so good. I'm specifically interested in the dual banding feature though. I'm sorry, your honor. The dual banding feature is what I'm interested in seeing. Let me ask the question this way. Where in the figures of the 673 patent do you find the dual bands? Well, for example, in figure four, you see them quite clearly. That's a detailed exemplification of the band area of the flashlight. Well, that's, when you're saying figure four, are you talking about, we're at page 2849 of the joint appendix? I'm sorry? Page 2849 of the joint appendix? Yes. Okay. Now, that has two, as I read them, two parts of figure three, one of which is the flashlight and the other of which is the cradle. And then figure four appears, are you saying that the two bands are over here on the right side of that figure? Yes. Is that what you're pointing to? Yes. And one of them is called annular flange 102. And the annular flange 102 is simply a portion of the aluminum flashlight from which any anodizing material has been removed. So it's bare aluminum. And then the second band is an actual separate part, 104, which is termed an annular contact member. And then the two intervening parts, which are 98 and 100, are insulating rings to separate the annular contact member 104 from the rest of the flashlight. Well, yes, I understand that, and that relates up to figure three, the top figure in figure three. Yes. But that seems to me to be a one-band structure, not a two-band structure. You understand my concern here, what I'm getting at? It's two bands because in the preferred embodiment, this is a machined aluminum flashlight in which, generally speaking, all the MAG instruments machined aluminum flashlights are coated with a black anodizing material for protecting it. And so in the actual flashlight, you see two bands. I'm going to focus in specifically on my concern here because I may be missing something very fundamental. And if I am, I want you to correct me right at the outset so I don't walk down the path too far. But if I look at figure three and I'm looking for an analog to the two-band structure, what I'm seeing is a single band with two other structures on either side of the band. And when you point me to figure four, again, I'm seeing 104, which is the single band that I'm seeing in figure three, and then 102, which is just part of the broader part of the flashlight. I'm not seeing two separate bands or depressions going around the flashlight. Am I missing something? In those particular figures viewed in isolation, I would submit to your honor that what figure four is showing is that this annular flange 102 has a distinctly separate appearance in the flashlight. Because in the ordinary course, you don't sell, and I think anyone of ordinary skill would understand, you don't sell these flashlights in their bare aluminum state. They're always coated or painted in some way. I would also point out that— Does figure one teach us anything? Not only does—I'm sorry. Does figure one teach us anything in terms of these rings? You've got 98 and 100. 98 and 100, I take it, are the insulating material, correct? 98 and 100, yes. Yeah, right. Yes. So the bands here that conduct are 104 and 102, correct? That's correct. Okay. Well, all right. I think I have your point. I think you've answered it. I would only also point out, your honor, that in the claims, the claims talk about conductive strips, two different conductive strips. So the claims actually contemplate that these will be not just—the second strip will not just be broadly the overall flashlight, but in fact will be an identifiable contact on the flashlight. And as I said, this flashlight may or may not be aluminum. It may be plastic with these two bands on them, in which case they would be identifiable. All right. Mr. Clark, your time has expired, and we'll have to move on. So we'll hear from—rebuttal from Mr. Watts. Thank you. With regard to the patent, there is a misunderstanding here because the claims do not talk about conductive strips. They talk about a single conductive strip, which is the equivalent of a single band. With regard to the claimed inability of Brinkman to understand what perception means, this comes up often in trademark cases where a fair use is claimed because the mark is not a noticeable attention getter. So this is not unusual in trademark cases. With regard to the law that some elements of a design may be functional and others that are not functional, I'd refer you to Section 2E-5 of the Trademark Act, which only prohibits registration of a matter which as a whole is functional. Furthermore, as indicated in Morton Norwich, a feature that merely accommodates a useful function does not mean it is essential to the use or purpose of the article. To conclude, if the trademark is construed to include contrasting bands as we say it should be, there is no evidence to support the board's finding of functionality. Brinkman has not even attempted to claim that having the rings contrast with the barrel is functional. And if the position of the rings on the barrel is considered to be part of the mark as it should be because that's the way it's described and shown in the drawing, there is no evidence that the positioning of the mark is functional. Brinkman, again, has not submitted any evidence that the particular location of the mark is functional. Thank you, Mr. Weiss. Case is submitted. We thank both counsel.